Please call the next case. Docket 4-13-07-21-WC Innovative Staff Solutions v. Workers' Compensation Commission, Ronald Caldwell. You may proceed. Do I get a sign now, Counselor? I am, unfortunately. May it please the Court, Counselor? My name is Eric Chobanek. I represent the employer in this case, Innovative Staff Solutions. The petitioner in this case is alleging that he suffered an injury to his right shoulder as a result of repetitive trauma while he was working for the respondent. I'd like to focus my time today on two issues. First, the job that the petitioner was doing for my client and its relation to the medical causation opinions and evidence. Now, the petitioner's job involved retrieving a pallet of raw materials to his machine. He'd take the raw aluminum that weighed anywhere from 2 to 7 pounds, he'd pick it up, he'd put it in the machine, he'd press the button, and then he'd turn around and generally do it on another side. He wasn't machining these parts or anything. He was essentially just picking up a piece of aluminum, putting it in the machine, pressing the button, and it would machine it into the outside of an aluminum housing for a transmission on a lawnmower. So after he did that, he would do that until his pallet was full, then he'd take it away and start the process all over again. He would generally, like I said, run two machines at a time. Now, the important piece of information in regards to all of this is in regards to the height of the area at which he was placing the part. The petitioner testified that all the machines were different, but generally there was a top position and a bottom position at which he was placing the raw aluminum. Now, he testified that the top position was approximately eye level, so slightly above shoulder level, and he testified that the bottom position was lower than that. Based upon the record, it looked as if it was right at shoulder level, if not slightly below shoulder level. All of the evidence was that he completed anywhere from 100 to approximately 460 parts per day. It varied every single day that he was working there as he was working on different machines, some of which would take a long period of time, some of which would take a short period of time. Now, there are two doctor's opinions in the record. They support the claim, don't they? Well, the first doctor's opinion is Dr. Fletcher. That's the treating doctor's opinion. He does support the claim, and the arbitrator and the trial court decided not to rely upon his testimony. We would ask that you do the same. Dr. Fletcher. Doesn't Dr. Weiss, the IME, support Fletcher's diagnosis of right shoulder impingement syndrome? Well, what Dr. Weiss actually says is that the petitioner would have to perform this task at or above shoulder level, at least 300 times a day. Our argument here today is that. . . 250 to 300? If you actually read his testimony, Your Honor, he states that as far as the number 300, I was using that number because that was the history he gave me. So I would not have a problem if you were doing it 250 times a day. I was giving you a ballpark figure, at least several hundred times a day of overhead lifting. He said if he lifted overhead, there's causation. Correct. If he didn't, there wasn't. Correct. We've got Fletcher saying causation. We've got Weiss saying if he lifted over his head, there is causation. Now, the Commission found that there's evidence in the record that said he did in fact lift above his shoulders. What I would say first in terms of Dr. Fletcher, Dr. Fletcher, in his opinion, if you look at the hypothetical that was proposed to him, that hypothetical that was the basis of his opinion included a job description. That job description said that he regularly lifted 25 pounds on a day and occasionally lifted 100 pounds. That's what he based his causation opinion on. And obviously from the testimony that's in the trial, he didn't do that. All the parts that he picked up weighed anywhere from 2 to 7 pounds. Now, on to Dr. Weiss. Dr. Weiss did say if he was lifting these parts above his shoulder, it would be causally connected. But part of that is that he gave a number. If he had lifted these parts above his shoulder and he only lifted 100 of them, he wouldn't have given causation. He wouldn't have given a causation opinion. And that's specifically what he says in his testimony. He also qualified. He said overhead about 300 times a day. He didn't say a minimum of 300. He said about. I absolutely believe he said about. And in fairness, the point of our argument is that if you look at the testimony, look at all the evidence, this guy didn't do – the petitioner did not do this job 300 times, 400 times every day. There were days that he did his job 100 times, that he picked up the part and put it in there 100 times. There were days that he did it 450 times. And there's a top point and a bottom point. The top point, yes, that is above his shoulder. The bottom point is below his shoulder. There's nothing in the evidence that actually supports looking at Dr. Weiss' opinion and finding that he gave causation. He didn't lift that many times a day. It wasn't five days a week, eight hours a day. Let's set aside the number of times. I know to argue your case, you hone in on that issue, and that's important. Because if you see an inconsistency, you've got to utilize it. What about the fact that prior to July of 2011, Clayman had no documented complaints involving his shoulder. X-rays reveal no evidence of any history of dislocations or any degenerative changes in the shoulder. And then he's diagnosed by two physicians with right shoulder impingement syndrome. So if this isn't somebody who has a history, has problems before he was working, he's doing all these things, whether it's 250, if you'd like it to be, versus 300, and all of a sudden he's got these medical problems he didn't have before. That's not any supportive evidence of the Clayman's claims in his testimony? My opinion, Your Honor, is that, as we all know, the petitioner has the burden of proof to prove this case. And if you look at the petitioner's testimony himself, like any one of us, he has no idea what caused his shoulder. So we need to rely upon doctors' opinions to tell us what exactly caused this. In the medical history, the doctors' opinions support him, don't they? I would say that the doctors' opinions do not. The medical history, from your argument, does support it. We don't have any record of him undergoing any other shoulder problems prior to this. But the only opinions in the case, from the medical doctor's point of view, in our opinion, do not support a finding of causation. And we have to rely upon that. If there were no opinions from a doctor, and we just had an individual who came in and said on day X, on June 1st, my shoulder didn't bother me, it's never bothered me before he starts working, he says, now my shoulder bothers me, and we don't have any opinions from a doctor saying that that is causally related, the arbitration, the trial court, and this is the commission, would never find that compensable. Well, do you have any other opinions, medical opinions, doctor expert testimony, that's not causally related? No. Dr. Weiss's opinion, in our point of view, states that it's not causally related. If you look at the beginning part. How does he say that? He agreed with Fletcher's diagnosis of right shoulder impingement syndrome. Are you disputing that? Oh, no. I must have misunderstood your question. I apologize.  He did have a right shoulder impingement. It's just as to the causation of the right shoulder. What did Mr. Zeruson have to say about the petitioner lifting his arms above his head or lifting overhead? What did he have to say? Mr. Zeruson stated he actually relied upon a sheet that he had filled out in regards to what the petitioner was actually doing, and he said that he agreed with generally everything that the petitioner was saying. That he was doing this job anywhere from 100 to 450, it could have been more than that, and that some of it was at eye level, some of it was at below shoulder level. But generally none of it disagreed with as to the height that he was working at. Some of it was above his head, was it not? Correct. It was not above his head, Your Honor, but it was above his shoulder. Petitioner said he lifted above his shoulder. Zeruson agrees with it. And the arbitrator also relied on accompanying job photographs to satisfy the requirements that Dr. Weiss had in his causation opinion. Now if that's all evidence that supports the Weiss causation opinion, why is the decision against the manifest plea? Our opinion, Your Honor, is that the arbitrator failed to look at, failed to take into account the fact that yes, some of this was above his shoulder, but some of it was below his shoulder. If you look at the general numbers that he says, from 100 to 450 times a day, clearly some of this is below his shoulder, clearly some of it is above his shoulder. The only thing to rely upon is one sentence in Dr. Weiss's cross-examination, at which time he stated that he wouldn't have any problem at 250. That's the only piece of information to rely on. But in the absence of contrary evidence, isn't it up to commission to determine the weight and sufficiency of the evidence? I mean, what you have to do is point out an inconsistency here and there, but you're not telling us anything that says that it's against the manifest weight, that there's no sufficient evidence to support the commission's decision. I believe that there's not sufficient evidence to support their decision based on my continued argument that I've made here. He specifically gave a number. He's the doctor. He's the one who gave this opinion. That's the only opinion the arbitrator relied upon. He gave this number, and there's no evidence to show that he did this job up to that number. So in our opinion, there's no evidence that supports the commission's decision. Really? What about the claimant and what about the medical history and what about the co-worker that says he was lifting this above his head up to 500 times? There's no evidence? Well, I believe that in this situation, in a repetitive trauma case, we must rely upon the doctor's opinions. This guy, the petitioner himself, was uncertain as to how he hurt himself. At some point he said he slept on a rung, he woke up on Saturday after sleeping, he believed sleeping on a rung, and his shoulder hurt. Well, that sort of probably helps his credibility because he's got no prior history of any problems. He's obviously not somebody who's trying to gild a lily, is he? No, Your Honor, and I will not attack his credibility. I have no issue with that. The point is the only opinions we have are the doctor's opinions, and based on our argument in our brief, I believe the doctor's opinions do not support the commission's decision. Thank you. Thank you, counsel. Counsel, you may respond. Good afternoon. May it please the Court, Mr. Spanak. I'm just going to touch on a couple of things. Could you introduce yourself for the record? Excuse me. My name is Katherine Wood. I represent the appellee, Ronald Holbrook. I'm just going to touch on a couple of things here, and some of it's what's been discussed, and I want to clarify a couple of things. With regards to the number of times the petitioner, Mr. Holbrook, was lifting his arm above his head, yes, he did have to put these parts into the machine. He did that somewhere between 100 and 450 times a day. Those facts aren't disputed. What counsel has failed to indicate is that once he puts that part into the machine, he has to take that part out of the machine as well. So he is lifting his arm up, eye level, to put the part in the machine. Then goes the other side of the machine, lifts his arm up to pull it back out of the machine and place it. So at least twice on every time he does this activity. At least twice for every single part. So when we're looking at lifting his arm to shoulder, above shoulder height, an average of 300 times per shift, as is testified to by Dr. Weiss, what we're actually looking at is an average of 600 times per shift that he's lifting his arm up to that height. So in that sense, when we're looking at Dr. Weiss' testimony about lifting his arm up to above shoulder height 300 times, the evidence supports that that is actually occurring on the average daily basis. And I do want to clarify, both of the doctors agree he has this impingement syndrome. This is the pathology he has, regardless of whether it's related to his work. Dr. Weiss, and I'm not going to touch on Dr. Fletcher's testimony, simply because the commission didn't. However, when you look at Dr. Weiss' testimony, first of all, this is the independent medical evaluator. This isn't a treating physician. His stake in this is only that he's being paid to give an opinion. He has indicated, and I'm just going to read his testimony briefly out of my brief. His testimony is, if Mr. Hallbrook's history was correct, that he had to lift, you know, 10 pounds or whatever it was, overhead 300 times a day, then I think that was either a causative or aggravating factor. If he was not lifting overhead, and or if he was lifting significantly less, then my opinion would be that it was not related to work and simply represented a degenerative impingement syndrome or condition that is common in people in their 40s and 50s. And that is from the record, page 152 to 153. Of note, there's x-rays in the records that indicate there's no evidence of a significant degenerative condition. He had no prior issues with his shoulder. And I think the other issue here is a matter of credibility. It's clear that the arbitrator found Mr. Hallbrook to be credible. It was clear that any inconsistencies in the amount of times that he did this activity per day, the arbitrator agreed with him. The arbitrator relied on the testimony of Dr. Weiss that is based on what the reports from Mr. Hall, or based on the reports from Mr. Hallbrook. And simply, the last thing I'm going to argue, and then I'm not going to waste any more of your time, you know what the standard of review is on this. This is a contrary to the manifest way to the evidence argument. There is sufficient evidence that the appropriate prior fact could determine that this was an injury causally related to the job. The plaintiff in this matter has not overthrown that burden to show that the commission was clearly wrong. That the manifest way to the evidence is against the commission's decision. So for those reasons, I would ask that you confirm the commission's decision that that decision was not against the manifest way to the evidence. Thank you. Thank you, counsel. Counsel, you may reply. I have nothing further to add. Thank you. Thank you both, counsel, for your arguments in this matter. We'll be taking an advisement. The witness position shall issue.